**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs, and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CEDRIC DECLERCQ and CARLOS EDUARDO ORNELLAS DE ROSA,** Individually and on Behalf of All Others Similarly Situated, <br><br>                   **Plaintiffs,** <br><br> -against- <br><br> **JEMANYA CORP. d/b/a MISS FAVELA, ANGELA DENNEULIN, ALAIN DENNEULIN and JEREMIE CARRIER,** Jointly and Severally, <br><br>                   **Defendants.** | <u>**CLASS & COLLECTIVE ACTION COMPLAINT**</u> <br><br><br> **Jury Trial Demanded** |

Plaintiffs Cedric Declercq and Carlos Eduardo Ornellas De Rosa (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief and investigation of counsel as to other matters, allege as follows:

## INTRODUCTION

1.      Plaintiffs are former bartenders at Defendants' Brazilian restaurant, "Miss Favela," located in the Williamsburg neighborhood of Brooklyn, New York.

2.      For their work, Plaintiffs either received payments that derived entirely from customers' tips (i.e. no base hourly wage) or were paid for fewer hours than they worked at rates significantly less than the minimum wage.

3.      Plaintiffs bring this action to recover unpaid minimum wage and unpaid overtime premiums owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  Plaintiffs also bring claims for unpaid spread-of-hours premiums, and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

4.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees who worked for Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants at Miss Favela.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants' business is located in this district.

7.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

8.     Plaintiff Cedric Declercq ("Declercq") has been, at all relevant times, an adult individual residing in Kings County, New York.

9.     Plaintiff Carlos Eduardo Ornellas De Rosa ("Ornellas") has been, at all relevant times, an adult individual residing in Kings County, New York.

10.    Throughout the relevant time period, Plaintiffs performed work for Defendants at their restaurant, Miss Favela, located at 57 South 5th Street, Brooklyn, New York 11249.

11.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

12.    Jemanya Corp. d/b/a Miss Favela ("Miss Favela" or the "Corporate Defendant") is an active New York corporation with its principal place of business at 57 South 5th Street, Brooklyn, New York 11249.

13.    Defendants Angela Denneulin, Alain Denneulin and Jeremie Carrier ("Carrier" and, together with Angela Denneulin and Alain Denneulin, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") are owners and operators of the Corporate Defendant.

14.    According to the New York State Department of State, Division of Corporations, Angela "Denneuliu" is listed as the Chief Executive Officer of the Corporate Defendant.

15.     Upon information and belief, throughout the relevant time period, Defendants Carrier and Alain Denneulin have been co-owners of the Corporate Defendant.

16.     The Individual Defendants maintained operational control over the Corporate Defendant and set the Corporate Defendant's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running the business of the Corporate Defendant.

17.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously in their direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

18.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

19.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA, 29 U.S.C. § 203(d).

20.     At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

21.     Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00

22.     All actions and omissions described in this complaint were made by Defendants

directly or through their supervisory employees and agents.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second

Causes of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants at any time since January 3,
> 2015 and through the entry of judgment in this case (the "Collective
> Action Period") who worked as non-management employees (the
> "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime

premiums for work performed in excess of forty (40) hours each week.  As a result of these

policies, Plaintiffs and the Collective Action Members did not receive the legally required

minimum wage or overtime premium payments.

25.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of

Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the

following class:

> All persons employed by Defendants at any time since January 3,
> 2012 and through the entry of judgment in this case (the "Class
> Period") who worked as non-management employees at (the "Class
> Members").

27.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

28.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29.    Upon information and belief, there are well in excess of forty (40) Class Members.

30.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

    a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

    b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

    c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

    d.    whether Defendants failed and/or refused to provide Plaintiffs and the Class Members with a notice of Defendants' intention to rely on the tip-credit to pay a reduced minimum wage;

    e.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

f.     whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

g.     whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.     whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.     whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

j.     whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

37.     <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, and did not receive proper wage statements or wage notices.

38.     If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

39.     <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

40.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

41.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

42.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendant.

43.     The individual members of the Class have no interest or capacity to bring separate Actions; Plaintiffs are unaware of any other litigation concerning this controversy, except for *Matos v. Jemanya Corp.*, *et al.*, docket number 15-cv-2820, which settled in 2016; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Restaurant**

44.     At all relevant times, Defendants have been in the restaurant business.

45.     Upon information and belief, in addition to Miss Favela, Defendants own, operate and manage "Felix," a French restaurant located at 340 West Broadway, New York, New York 10013.

46.     Miss Favela is open seven (7) days per week. Although lunch and dinner were generally served from 12:00 pm through 12:00 am Sunday through Thursday, and 12:00 pm

through 1:00 am on Fridays and Saturdays, the restaurant typically served drinks until much later, and employees were generally required to work until between approximately 1:00 am and 4:30 am.

47.     Upon information and belief, at all relevant times, the Individual Defendants have operated Miss Favela through the corporate entity Jemanya Corp.

48.     Jemanya Corp. was registered with the New York State Department of State, Division of Corporations on August 22, 2007.

49.     Upon information and belief, the Individual Defendants are frequently present in the restaurant, where they order supplies, instruct employees to perform various tasks, supervise employees and take an active role in ensuring that the restaurant is run in accordance with their procedures and policies.

50.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Miss Favela, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

51.     Plaintiff Declercq was employed by Defendants as a bartender from in or around September or October 2015 through approximately August 2017 (the "Declercq Employment Period").

52.     For approximately the first year of the Declercq Employment Period, Plaintiff Declercq typically worked four (4) days per week, from approximately 11:00 am through 1:00 am on Thursday, 5:00 pm to 4:00 am on Friday, 11:00 am to 4:00 am on Saturday and 11:00 am to 12:00 am on Sunday, for a total of approximately fifty-five (55) hours per week, and sometimes

more. Starting in or around the second year of the Declercq Employment Period, Plaintiff Declercq worked a similar schedule, although his start time on Sunday was changed to 2:00 pm. Thus, Plaintiff typically worked a total of approximately fifty-two (52) hours per week during the second year of his employment with Defendants, and sometimes more.

53.     For the first approximately three (3) months of the Declercq Employment Period, Plaintiff Declercq's payment derived entirely from customers' tips, and he did not receive an hourly wage of any kind.

54.     From approximately mid-December 2015 through spring 2016, Plaintiff Declercq received a paycheck showing payment for a maximum of thirty-seven and one-half (37.5) hours per week at the tipped minimum wage. Subsequently, Plaintiff Declercq was paid for a maximum of forty (40) hours per week. Thus, throughout the Declercq Employment Period, Plaintiff Declercq did not receive wages of any kind for hours worked in excess of thirty-seven and one-half (37.5) or forty (40) hours per week.

55.     Plaintiff Declercq typically received his payment from one of the Individual Defendants on Friday.

56.     On several occasions, Plaintiff Declercq complained to Defendant Carrier that he was not paid for a substantial number of hours that he worked each week. Defendant Carrier would typically respond by asking Declercq why he was asking for more money or assure him that they would talk about it "next week."

57.     Plaintiff Ornellas was employed by Defendants as a bartender from approximately November or December 2010 through April 2011, again from approximately late fall 2011 through September 2012 and for a final period from approximately June 2014 through February 2016 (altogether, the "Ornellas Employment Period").

58.     Throughout the Ornellas Employment Period, Plaintiff Ornellas typically worked four (4) days per week, from 11:00 am to 1:00 am or 2:00 am on Thursdays, 5:00 pm to 4:00 am or 4:30 am on Friday, 11:00 am to 3:00 am or 4:00 am on Saturday and 11:00 am to 12:00 am or 1:00 am on Sunday, for a total of approximately fifty-four to fifty-five (54-55) hours per week, and sometimes more.

59.     During Plaintiff Ornellas's first employment with Defendants, from approximately November or December 2010 through April 2011, Plaintiff Ornellas's payment derived entirely from customers' tips, and he did not receive an hourly wage of any kind. Thereafter, Plaintiff Ornellas received a paycheck showing payment for typically approximately fifteen (15) hours per week at the tipped minimum wage. Thus, throughout the Ornellas Employment Period, despite the fact that he typically worked more than fifty (50) hours per week, Plaintiff Ornellas did not receive wages of any kind for hours worked in excess of approximately fifteen (15) hours per week.

60.     Plaintiff Ornellas typically received his payment from Defendant Angela Denneulin or Defendant Carrier on Thursday.

61.     Upon information and belief, kitchen employees, including dishwashers and cooks, received a flat salary that did not vary with the number of hours that they worked and thus, did not receive proper overtime pay for hours worked in excess of forty (40) hours per week.

62.     Upon information and belief, certain undocumented workers who worked as servers did not receive an hourly wage of any kind but were paid entirely from customers' tips.

63.     Plaintiffs were never informed that Defendants were relying on the tip credit to compensate them at less than the full minimum wage. As such, Plaintiffs were not paid the legally-required minimum wages for all hours that they worked.

64.     Throughout their respective employment periods, Plaintiffs were not paid overtime

premiums of one and one-half times (1.5) times their regular hourly rate for hours worked in excess of forty (40) each workweek.

65.     Despite the fact that Plaintiffs routinely worked shifts in excess of ten (10) hours, Defendants failed to pay Plaintiff spread-of-hours premiums equal to an additional hour of minimum wage for such days.

66.     Throughout their respective employment periods, Plaintiffs were paid entirely cash, with no breakdown of the hours that they worked. Plaintiffs never received a proper statement with his wages detailing their hourly rate(s) or hours worked during the pay period.

67.     At no point during Plaintiffs' employment did they receive a wage notice showing their hourly or overtime rates or any other document detailing the manner in which they were paid.

**Defendants' Unlawful Corporate Policies**

68.     For the majority of Plaintiffs' respective employment periods, Defendants did not maintain any formal timekeeping system through which Defendants' employees tracked their hours worked. While Defendants implemented a time clock in or around spring 2017, it stopped working properly after approximately two to three (2-3) weeks, and Plaintiff Declercq continued to receive checks showing payment for a maximum of forty (40) hours of work, despite the fact that he clocked in and out regularly for more than forty (40) hours each week.

69.     Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums and spread-of-hours premiums and failing to provide proper wage notices and wage statements.

70.     Defendants did not provide Plaintiff or the Collective Action Members with proper wage notices at the time of hire or by February 1 of each year.

71.     Plaintiffs were not paid at the legally required minimum wage rate for all hours

worked.

72.     Defendants did not provide a notice of their intention to rely on the tip credit to Plaintiffs.

73.     Despite the fact that Plaintiffs typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) times their hourly rate.

74.     Despite the fact that Plaintiffs often worked shifts of over ten (10) hours, Plaintiffs were not paid spread-of-hours premiums consisting of one (1) extra hour of minimum wage for each day when Plaintiffs worked in excess of ten (10) hours per day.

75.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

76.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Defendants have failed to pay the full minimum wage.

78.     By failing to pay Plaintiffs minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 203(m), 206 and 215 (a)(2).

79.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

80.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. By failing to pay Plaintiffs and the Collective Action Members for all hours worked and failing to notify Plaintiffs and the Collective Action Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT-UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and Collective Action Members)

81.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

83.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation,

damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

85.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

87.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

88.     Plaintiffs, on behalf of himself and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular

rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

90.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

**FIFTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

44.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

45.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

46.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

47.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

48.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

49.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

50.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

51.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

52.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing

Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

h.  An award of compensatory damages as a result of the Defendants' failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

i.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

j.  An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each

workweek that the violations of NYLL, Article 6 § 195(1) pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiffs and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

k.  An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members, as provided for by NYLL, Article 6 § 198(1)-d;

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      January 3, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Pelton@PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the*
*putative FLSA Collective and Class*

21

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Miss Favela, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signature _____

Printed Name _____

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Miss Favela, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signature

CARLOS Eduardo Canelas De Rosa
Printed Name